Marc D. Fink, *pro hac vice*
Center for Biological Diversity
4515 Robinson Street
Duluth, Minnesota 55804
Tel: 218-525-3884; Fax: 817-582-3884
mfink@biologicaldiversity.org

Neil Levine, *pro hac vice*
Grand Canyon Trust
2539 Eliot Street
Denver, Colorado 80211
Tel: 303-455-0604; Fax: 303-484-8470
nlevine@grandcanyontrust.org

Roger Flynn, *pro hac vice*
Western Mining Action Project
P.O. Box 349
440 Main St., #2
Lyons, CO 80540
Tel: 303-823-5738; Fax: 303-823-5732
wmap@igc.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PRESCOTT DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; GRAND CANYON TRUST; and SIERRA CLUB,<br><br>Plaintiffs<br><br>vs.<br><br>KEN SALAZAR, Sec'y of the Interior; U.S. DEPARTMENT OF THE INTERIOR; and U.S. BUREAU OF LAND MANAGEMENT,<br><br>Defendants,<br><br>and<br><br>QUATERRA ALASKA; NORTHWEST MINING ASSOCIATION; and URANIUM ONE U.S.A.,<br><br>Defendant-Intervenors. | No. CV08-8117-PCT-NVW<br><br>SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

INTRODUCTION

1.      Plaintiffs Center for Biological Diversity, Grand Canyon Trust, and Sierra Club challenge Defendants' refusal to withdraw over one million acres of federal lands near Grand Canyon National Park from location and entry under U.S. mining laws, as directed by a June 25, 2008 Emergency Resolution of the U.S. House of Representatives' Committee on Natural Resources ("Emergency Resolution").  Defendants must comply with the Emergency Resolution pursuant to the Federal Land Policy and Management Act (FLPMA) and applicable regulations.  Plaintiffs also challenge Defendants' authorization of specific uranium exploration and mining activities, including the Uranium One and Quaterra Alaska projects, because they are within the area covered by the Emergency Resolution and because Defendants' approved these projects in violation of the National Environmental Policy Act (NEPA) and FLPMA.  In addition, Plaintiffs challenge Defendants' failure to respond to Plaintiffs' June 25, 2008 Petition, submitted pursuant to the Administrative Procedure Act (APA), requesting the Secretary of Interior to immediately withdraw all lands subject to the Emergency Resolution.

2.      Plaintiffs seek declaratory relief that Defendants violated FLPMA Section 204(e), 43 U.S.C. § 1714(e), and 43 C.F.R. § 2310.5, by refusing to withdraw over one million acres of federal lands from mineral location and entry as required by the Emergency Resolution, and by authorizing or allowing uranium exploration activities within the area of the required mineral withdrawal.  Further, Plaintiffs seek declaratory relief that prior to authorizing or allowing uranium exploration activities, Defendants violated (1) NEPA by failing to conduct the required environmental analysis and provide for public involvement and (2) the 1872 Mining Law and FLPMA by failing to determine and verify the validity of the mining claims to be utilized by the subject uranium exploration projects and that the subject operations do not cause unnecessary or undue degradation of the lands. 43 C.F.R. § 3809.100(a); 43 U.S.C. § 1732(b).  Plaintiffs also seek declaratory relief that Defendants violated the APA, 5 U.S.C. § 553(e), by failing to

1  respond to Plaintiffs' APA Petition requesting the Secretary of Interior to immediately

2  issue a rule withdrawing all lands subject to the Emergency Resolution.  Plaintiffs seek

3  injunctive relief compelling Defendants to immediately withdraw these federal lands

4  from mineral location and entry, vacating any approvals allowing for exploratory

5  uranium projects within the area of the required mineral withdrawal, including the

6  Uranium One and Quaterra Alaska projects, and enjoining Defendants from authorizing

7  or allowing any additional mining or exploration to proceed within the withdrawal area.

8  Plaintiffs further seek injunctive relief ordering Defendants to respond to Plaintiffs'

9  Petition concerning the Emergency Resolution.

10                                          JURISDICTION

11         3.      Jurisdiction is proper in this Court under 28 U.S.C. § 1331, 5 U.S.C. §§ 551

12  et seq., and 28 U.S.C. § 1346, because this action involves the United States as a

13  defendant and arises under the laws of the United States, including FLPMA, 43 U.S.C. §

14  1714(e), § 1732(b) and its regulations; the General Mining Law of 1872 ("Mining Law"),

15  30 U.S.C. §§ 21 et seq. and its regulations; and NEPA, 42 U.S.C. §§ 4321 et seq. and its

16  regulations.  An actual justiciable controversy exists between Plaintiffs and Defendants.

17  The requested relief is proper under 28 U.S.C. § 2201-02 and 5 U.S.C. §§ 705 & 706.

18  The challenged agency actions are final and subject to this Court's review under 5 U.S.C.

19  §§ 702, 704, and 706.

20                                             VENUE

21         4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because the

22  area of the required mineral withdrawal is located on federal lands within Arizona.  In

23  addition, Plaintiff Center for Biological Diversity's main office is located in Tucson,

24  Arizona; the Grand Canyon Trust is headquartered in Flagstaff, Arizona; and the Sierra

25  Club has offices within the state.  Defendants U.S. Department of the Interior and U.S.

26  Bureau of Land Management have offices within the district.  Assignment is proper in the

27

28

1  Prescott Division because the required mineral withdrawal is located in Coconino and

2  Mohave Counties.

3  PARTIES

4       5.    Plaintiff Center for Biological Diversity is a non-profit corporation with

5  over 40,000 members dedicated to the preservation, protection, and restoration of

6  biodiversity and ecosystems throughout the world.  The Center's main office is located in

7  Tucson, Arizona.  The Center also has an office in Flagstaff, Arizona.  The Center works

8  to insure the long-term health and viability of animal and plant species across the United

9  States and elsewhere, and to protect the habitat these species need to survive.

10       6.    Plaintiff Grand Canyon Trust is a non-profit corporation headquartered in

11  Flagstaff, Arizona with over 3,500 members.  The mission of the Grand Canyon Trust is

12  to protect and restore the canyon country of the Colorado Plateau – its spectacular

13  landscapes, flowing rivers, clean air, diversity of plants and animals, and areas of beauty

14  and solitude.  One of the Trust's goals is to ensure that the Colorado Plateau is a region

15  characterized by vast open spaces with restored, healthy ecosystems and habitat for all

16  native fish, animals, and plants.

17       7.    Plaintiff Sierra Club is a non-profit, public interest environmental

18  organization with over 700,000 members, whose mission is to explore, enjoy and protect

19  the planet.

20       8.    Plaintiffs' members use and enjoy the federal lands that are located north

21  and south of Grand Canyon National Park, including the lands that are within the areas of

22  the required mineral withdrawal, and more specifically including the lands that

23  Defendants have or will authorize(ed) or allow(ed) uranium drilling and exploration.

24  Plaintiffs' members use and enjoy these federal lands for hiking, fishing, hunting,

25  camping, photographing scenery and wildlife, and engaging in other vocational,

26  scientific, and recreational activities.  Plaintiffs' members derive recreational,

27

28

1   inspirational, religious, scientific, educational, and aesthetic benefit from their activities

2   within these federal lands.  Plaintiffs' members intend to continue to use and enjoy these

3   federal lands frequently and on an ongoing basis in the future, including this summer and

4   fall.  Plaintiffs also have a procedural interest in the proper management of these federal

5   lands that is in full compliance with mandatory public land and environmental laws and

6   regulations.

7         9.     The aesthetic, recreational, scientific, educational, religious, and procedural

8   interests of Plaintiffs and their members have been and will continue to be adversely

9   affected and irreparably injured if Defendants continue to refuse to withdraw these areas

10   from location and entry under U.S. mining laws, and continue to authorize mining and

11   exploration within the area of the required withdrawal.  These are actual, concrete

12   injuries caused by the Defendants' refusal to comply with the Emergency Resolution,

13   FLMPA, NEPA, the Mining Law, the APA, and the implementing regulations of these

14   laws.  The injuries will be redressed by the relief sought.

15         10.    Defendant Dirk Kempthorne is sued in his official capacity as Secretary of

16   the Interior.  Mr. Kempthorne is the responsible official directed to immediately

17   withdraw the federal lands at issue pursuant to the June 25, 2008, Emergency Resolution

18   and delegated with management responsibility over lands surrounding the Grand Canyon.

19         11.    Defendant U.S. Department of the Interior oversees the U.S. Bureau of

20   Land Management.

21         12.    Defendant U.S. Bureau of Land Management is an agency within the U.S.

22   Department of the Interior, and is the agency responsible for the lawful management of

23   the federal lands within the required withdrawal area north of Grand Canyon National

24   Park.

25

26

27

28

1

FACTUAL ALLEGATIONS

2        13.    On March 17, 2008, the Grand Canyon Watersheds Protection Act of 2008

3    was introduced in Congress.  As proposed, this legislation would permanently withdraw

4    over one millions acres of public lands adjacent to the Grand Canyon National Park from

5    certain mining activities.

6        14.    On June 25, 2008, the U.S. House of Representatives' Committee on

7    Natural Resources issued an Emergency Resolution.  The Emergency Resolution compels

8    the Secretary of the Interior to immediate withdraw over one million acres of federal land

9    near Grand Canyon National Park.  The emergency withdrawal is temporary.  The

10   withdrawal's duration is for no more than three years.  The Secretary of the Interior

11   determines the exact duration of the emergency withdrawal.

12       15.    The Committee made several findings to support the Emergency

13   Resolution.  The Committee found that the international demand for uranium has

14   escalated dramatically, and there are now more than 1,100 uranium mining claims within

15   five miles of Grand Canyon National Park.  The Committee found that management of

16   public lands adjacent to Grand Canyon National Park has direct impacts endangered

17   species, the quality of surface water and groundwater, air quality, archeological

18   resources, recreational opportunities and the health and safety of Park visitors and

19   residents in the area.  The Committee found that the U.S. Forest Service recently

20   approved exploratory drilling for uranium at seven sites within three miles of Grand

21   Canyon National Park, using a categorical exclusion under the National Environmental

22   Policy Act.  The Committee found that uranium is radioactive when mined, producing

23   radium, thorium and radon gas, and that exposure to these elements is known to cause

24   cancer, kidney damage, and birth defects in humans.  The Committee found that previous

25   uranium mining operations near Grand Canyon National Park have left a legacy of

26

27

28

1  debilitating illness and death among Native Peoples in the area, and resulted in
2  contaminated soil and ground water that remains unremediated.

3      16.    For all these reasons, the Committee declared that an emergency situation
4  exists regarding uranium mining near Grand Canyon National Park and that extraordinary
5  measures must be taken to preserve the values that would otherwise be lost absent the
6  withdrawal.  The federal lands at issue are managed by the U.S. Bureau of Land
7  Management and the U.S. Forest Service.

8      17.    Pursuant to Section 204(e) of FLPMA, 43 U.S.C. § 1714(e) and 43 C.F.R. §
9  2310.5, the Emergency Resolution directs the Chair of the Committee to notify the
10 Secretary of the Interior and the Secretary of Agriculture that an emergency situation
11 exists regarding uranium mining near Grand Canyon National Park and orders the
12 Secretary of Interior to immediately withdraw the approximately 1,068,908 acres of
13 federal land near the Grand Canyon National Park from all forms of mineral location and
14 entry under the U.S. mining laws for up to three years.  In part, the Emergency
15 Resolution seeks to maintain the status quo until Congress fully considers the "Grand
16 Canyon Watersheds Protection Act of 2008."

17     18.    On June 25, 2008, Representative Nick Rahall II, Chairman of the
18 Committee on Natural Resources, sent a letter to Secretary Kempthorne transmitting the
19 Emergency Resolution.

20     19.    Secretary Kempthorne, the U.S. Department of Interior, and the U.S.
21 Department of Agriculture have taken no steps to withdraw the federal lands from
22 location and entry.  On July 15, 2008, the U.S. Department of Interior sent a letter to
23 Representative Rahall addressing the Emergency Resolution.  The July 15, 2008 letter
24 indicates that the Secretary of the Interior will not implement the Emergency Resolution.

25     20.    On June 25, 2008, Plaintiffs Center for Biological Diversity and Grand
26 Canyon Trust submitted to Secretary Kempthorne a petition pursuant to the APA, 5

27
28

1    U.S.C. § 553(e) seeking compliance with the Emergency Resolution.  Defendants have

2    not responded to Plaintiffs' APA petition.

3          21.    On June 27, 2008, the Arizona Strip Resources Area office of the U.S.

4    Bureau of Land Management ("BLM") authorized or allowed the mining company

5    Uranium One to proceed with uranium exploration activities.  Prior to authorizing or

6    allowing this uranium exploration project to proceed, BLM did not conduct an

7    environmental review of, or allow for public comment on, the Uranium One project

8    under NEPA and failed to consider its legal duty to prevent actions that cause

9    unnecessary or undue degradation of the lands pursuant to FLPMA.  The location of

10   these activities is on BLM land that is within the area of the required mineral withdrawal.

11   Uranium One has not demonstrated that it has discovered a "valuable mineral deposit" on

12   each of its mineral claims that will be utilized by the subject mineral activities.  Uranium

13   One has not shown that these claims are valid under the Mining Law.  BLM has not

14   determined whether Uranium One has discovered a "valuable mineral deposit" on each of

15   its mineral claims that will be utilized by the subject mineral activities.  Uranium One

16   does not have a "valuable mineral deposit" on its claims at these exploratory sites.

17         22.    On or about July 7, 2008; October 8 and 20, 2008; and April 23 and 27,

18   2009; BLM authorized or allowed the mining company Quaterra Alaska to proceed with

19   multiple uranium exploration activities.  Prior to authorizing or allowing these uranium

20   exploration projects to proceed, BLM did not conduct an environmental review of or

21   allow for public comment on the Quaterra Alaska projects under NEPA and failed to

22   consider its legal duty to prevent actions that cause unnecessary or undue degradation of

23   the lands pursuant to FLPMA.  The location of these activities is on BLM land that is

24   within the area of the required mineral withdrawal. Quaterra Alaska has not demonstrated

25   that it has discovered a "valuable mineral deposit" on each of its mineral claims that will

26   be utilized by the subject mineral activities.  Quaterra Alaska has not shown that these

27

28

1   claims are valid under the Mining Law.  BLM has not determined whether Quaterra

2   Alaska has discovered a "valuable mineral deposit" on each of its mineral claims that will

3   be utilized by the subject mineral activities. Quaterra Alaska does not have a "valuable

4   mineral deposit" on its claims at these exploratory sites.

5        23.    Other proposed uranium exploration projects within the area of the required

6   mineral withdrawal are currently pending before BLM.  BLM could approve or allow

7   these other uranium exploration projects at any time.

8        24.    BLM authorized or allowed these uranium exploration projects and

9   activities to proceed as "notice-level operations" under 43 C.F.R. § 3809.   Such projects

10   are limited to exploration activities that disturb less than five acres of land. Id. §

11   3809.21(a).

12        25.    Prior to authorizing or allowing the uranium exploration activities, BLM

13   did not conduct a review of the validity of the mining claims to be utilized by Uranium

14   One and Quaterra Alaska.  BLM did not prepare a "mineral examination report" (43

15   C.F.R. § 3809.100) prior to authorizing or allowing these exploration projects to proceed.

16   There is no evidence demonstrating that the mining claims to be utilized by these

17   authorized exploration projects and activities are valid.

18   STATUTORY AND REGULATORY BACKGROUND

19        26.    In FLPMA, Congress declares it the policy of the United States that,

20   (1)  the public lands be retained in Federal ownership, unless as a result of the land
21        use planning procedure provided for in this Act, it is determined that disposal
     of a particular parcel will serve the national interest;
22   . . .

23   (4)  the Congress exercise its constitutional authority to withdraw or otherwise
     designate or dedicate Federal lands for specified purposes and that Congress
24        delineate the extent to which the Executive may withdraw lands without
     legislative action;

25   (5)  in administering public land statues and exercising discretionary authority
26        granted by them, the Secretary be required to establish comprehensive rules
     and regulations after considering the views of the general public;
27   . . .

28

(8) the public lands be managed in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values; that, where appropriate, will preserve and protect certain public lands in their natural condition; that will provide food and habitat for fish and wildlife and domestic animals; and that will provide for outdoor recreation and human occupancy and use.

43 U.S.C.§ 1701(a).  These FLPMA provisions underscore Congress' express authority under the Constitution's Property Clause to "dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. Art. IV, § 3, cl. 2.  Congress may, as it deems appropriate, delegate its authority over public lands to the executive agencies such as the Department of the Interior.

27.     FLPMA defines "withdrawal" as "withholding an area of Federal land from settlement, sale, location, or entry, under some or all of the general land laws, for the purpose of limiting activities under those laws in order to maintain other public values in the area or reserving the area for a particular public purpose or program." 43 U.S.C.  § 1702(j).

28.     Section 204 of FLPMA governs land withdrawals.  Sections 204(b), (c) and (h) establish procedures for the withdrawal of lands by the Secretary of the Interior. 43 U.S.C. § 1714(b), (c) & (h).  Those procedures require Congressional notice, public notice and opportunity for comment and hearings on withdrawal proposals, and also dictate the duration of a land withdrawal.  Id.  For land withdrawals greater than 5000 acres, upon receiving the required notice, Congress may disapprove a withdrawal proposed by the Secretary of the Interior. Id. § 1714(b).

29.     FLPMA also includes an emergency withdrawal provision.  Section 204(e) of FLPMA, states as follows:

When the Secretary determines, or when the Committee on Natural Resources of the House of Representatives or the Committee on Energy and Natural Resources of the Senate notifies the Secretary, that an emergency situation exists and that extraordinary measures must be taken to preserve values that would otherwise be lost, the Secretary .  .  . shall immediately make a withdrawal and file notice of

such emergency withdrawal with both of those Committees.  Such emergency withdrawal shall be effective when made but shall last only for a period not to exceed three years.

43 U.S.C. § 1714(e).  Under FLPMA, the "values" intended to be preserved through an emergency withdrawal include "scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values." Id. § 1701(a)(8).  When an emergency situation is found to exist under FLPMA section 204(e), the procedures otherwise applicable to land withdrawals do not apply.  In invoking its emergency withdrawal authority in the June 25, 2008 Resolution and in prior Emergency Resolutions, Congress has sought to maintain the status quo while a pending piece of legislation works its way through Congress or existing legislation takes effect.

30.     Section 310 of FLMPA directs the Secretary of the Interior to promulgate rules and regulations to implement the Act in accordance with the APA. 43 U.S.C. § 1733(a).  Pursuant to this rulemaking authority, the Secretary has promulgated the following regulation to implement FLPMA§ 204(e):

> When the Secretary determines, or when either one of the two Committees of the Congress that are specified in section 204(e) of the Act (43 U.S.C. § 1714(e)) notifies the Secretary, that an emergency exists and that extraordinary measures need to be taken to protect natural resources or resource values that otherwise would be lost, the Secretary shall immediately make a withdrawal which shall be limited in its scope and duration to the emergency.  An emergency withdrawal shall be effective when signed, shall not exceed 3 years in duration and may not be extended by the Secretary.

43 C.F.R. § 2310.5(a).

31.     In addition to FLPMA, the Mining Law governs mining on federal public lands.  Except for claims with a proven valuable mineral deposit, when lands are withdrawn from entry under FLPMA, the Mining Law's authorization for citizens to explore for and develop minerals on those public lands terminates.  BLM regulations under the Mining Law provide:

> After the date on which the lands are withdrawn from appropriation under the mining laws, BLM will not approve a plan of operations or allow notice-level operations to proceed until BLM has prepared a mineral examination report to determine whether the mining claim was valid before the withdrawal, and whether it remains valid. . . . If the report concludes that the mining claim is invalid, BLM will not approve operations or allow notice-level operations on the mining claim.

43 C.F.R. § 3809.100(a).  As a result, it is unlawful under both the Mining Law and FLPMA for the BLM to approve or allow mining activities on withdrawn lands unless and until the agency determines the validity of an existing claim, including whether the claimant had discovered a valuable mineral deposit as of the withdrawal date.  Only claims perfected before the date of the withdrawal have a valid existing property interest.

32.     FLPMA imposes a mandatory duty on BLM to conserve public lands. Section 302(b) provides: "In managing the public lands, the Secretary shall, by regulation or otherwise, take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).  Prior to authorizing or allowing operations to proceed, including the subject uranium exploration projects, BLM must determine and verify that the operations will not cause unnecessary or undue degradation of public lands. 43 C.F.R. §§ 3809.301-313.  If an activity may cause unnecessary or undue degradation, BLM cannot authorize, allow, or approve the activities.

33.     Prior to authorizing or allowing uranium exploration activities, BLM must ensure that the activities are covered by a financial guarantee that meets the requirements of FLPMA. 43 C.F.R. §§ 3809.301-313.  If the operator does not agree to the amount and form of the BLM-determined financial guarantee, the mineral activity cannot proceed. Id.

34.     Pursuant to the APA, "Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e).  In addition, "Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding.  Except in affirming a prior denial or when the denial is self-

1  explanatory, the notice shall be accompanied by a brief statement of the grounds for

2  denial." Id.

3      35.    NEPA requires federal agencies to consider the environmental

4  consequences of their actions. 42 U.S.C. § 4331 et seq.  NEPA ensures that the agency

5  will have available, and will carefully consider, detailed information concerning

6  significant environmental impacts; it also guarantees that the relevant information will be

7  made available to a larger audience to ensure the public can play a role in both the

8  decisionmaking process and the implementation of the agency's decision.  NEPA requires

9  federal agencies to prepare a detailed "environmental impact statement" ("EIS") for any

10 major Federal action that may significantly affect the quality of the environment.  42

11 U.S.C. § 4332(2)(C).   An EIS must be prepared if there are substantial questions as to

12 whether a proposed project may have a significant effect on the environment.

13     36.    In determining the proper scope of a NEPA analysis, federal agencies must

14 broadly consider the environmental impacts of their actions and related actions.  Federal

15 agencies must not only review the direct impacts of their actions, but also analyze

16 indirect and cumulative impacts.  Indirect effects are those "caused by the action and are

17 later in time or farther removed in distance but are still reasonably foreseeable." 40

18 C.F.R. § 1508.8(b).  Cumulative impacts include impacts of "other past, present, and

19 reasonably foreseeable future actions regardless of what agency (Federal or non-Federal)

20 or person undertakes such other actions." Id. § 1508.7.

21     37.    In determining the significance of a proposed action, NEPA directs federal

22 agencies to consider a number of "significance" factors, including the unique

23 characteristics of the geographic area such as proximity to park lands, the degree to

24 which the environmental effects are likely to be highly controversial, the degree to which

25 the environmental effects may be highly uncertain or involve unknown risks, the degree

26 to which the action may establish a precedent for future actions with significant effects,

27

28

1  and whether the action is related to other actions with individually insignificant but

2  cumulatively significant impacts.  40 C.F.R. § 1508.27(b).

3  <u>CLAIMS FOR RELIEF</u>

4  <u>First Claim</u>:   <u>Defendants Have Violated the Emergency Resolution, FLPMA, and</u>
   <u>Implementing Regulations By Refusing to Immediately Withdraw the</u>
5  <u>Specified Federal Lands From Mineral Location and Entry</u>

6  38.   Plaintiffs hereby incorporate by reference all preceding paragraphs.

7  39.   The June 25, 2008 Emergency Resolution directs the Secretary of the

8  Interior to immediately withdraw over one million acres of specified federal lands near

9  Grand Canyon National Park from mineral location and entry.

10  40.   FLMPA directs the Secretary of the Interior to immediately withdraw

11  public lands from mineral location and entry when notified by the Committee on Natural

12  Resources of the House of Representatives that an emergency situation exists and that

13  extraordinary measures must be taken to preserve values that would otherwise be lost.  43

14  U.S.C. § 1714(e).

15  41.   U.S. Department of Interior regulations direct the Secretary of the Interior

16  to immediately withdraw public lands from mineral location and entry when the

17  Committee on Natural Resources of the House of Representatives notifies the Secretary

18  that an emergency exists and that extraordinary measures need to be taken to protect

19  natural resources or resource values that otherwise would be lost.  43 C.F.R. § 2310.5(a).

20  42.   Defendants have not withdrawn the specified federal lands from mineral

21  entry as required by the June 25, 2008 Emergency Resolution, FLPMA, and its

22  regulations.

23  43.   Defendants' refusal to withdraw the lands specified in the Emergency

24  Resolution from all forms of mineral location and entry violates the Emergency

25  Resolution, FLPMA, 43 U.S.C. § 1714(e), and 43 C.F.R. § 2310.5.  In refusing to

26  immediately withdraw the lands specified in the Emergency Resolution, Defendants have

27

28

1    unlawfully withheld and unreasonably delayed agency action required by law, within the

2    meaning of the APA, 5 U.S.C. § 706(1).

3    Second Claim:      Defendants Have Violated the APA by Failing to Respond to
                        Plaintiffs' Petition to Immediately Withdraw All Lands Subject to
4                       the Emergency Resolution

5          44.    Plaintiffs hereby incorporate by reference all preceding paragraphs.

6          45.    Defendants have failed to respond to Plaintiffs' June 25, 2008 APA Petition

7    submitted to Secretary Kempthorne requesting that the Secretary immediately withdraw

8    all lands from mineral entry as required by the Emergency Resolution.  Defendants also

9    failed to provide prompt notice and the required statement of grounds for denial of

10   Plaintiffs' APA Petition.

11         46.    Such a failure violates Plaintiffs' rights and Defendants' duties under the

12   APA, 5 U.S.C. § 555(e).

13         47.    In refusing to respond to Plaintiffs' APA Petition, Defendants have

14   unlawfully withheld and unreasonably delayed agency action, within the meaning of the

15   APA, 5 U.S.C. § 706(1).

16   Third Claim:    Defendants Have Violated the Emergency Resolution, FLMPA,
                     Implementing Regulations, and the Mining Law, By Authorizing
17                   Uranium Exploration Activities Within the Withdrawal Area

18         48.    Plaintiffs hereby incorporate by reference all preceding paragraphs.

19         49.    On June 27, 2008, BLM authorized or allowed the Uranium One mining

20   company to proceed with uranium exploration projects and activities within the area that

21   the Secretary of Interior was ordered to immediately withdraw from all forms of mineral

22   location and entry.  Prior to June 27, 2008 and BLM's authorization or approval of the

23   subject mineral exploration activities, Uranium One has not discovered a valuable

24   mineral deposit on each of its mining claims to be utilized by the subject mineral

25   exploration.  These Uranium One mining claims are not valid under the Mining Law.

26

27

28

1        50.     On or about July 7, 2008; October 8 and 20, 2008; and April 23 and 27,

2    2009; BLM authorized or allowed Quaterra Alaska mining company to proceed with a

3    number of uranium exploration projects and activities within the area that the Secretary

4    of Interior was ordered to immediately withdraw from all forms of mineral location and

5    entry.  Prior to BLM's authorization or approval of the subject mineral exploration

6    activities, Quaterra Alaska has not discovered a valuable mineral deposit on each of its

7    mining claims to be utilized by the subject mineral exploration.  These Quaterra Alaska

8    mining claims are not valid under the Mining Law.

9        51.     As part of the decision-making processes for these projects, BLM reviewed

10   impacts to various resources and issued resource "clearances."  In addition, BLM

11   conducted a "land status" review for the parcels proposed for uranium exploration

12   activities.  In conducting the land status review, BLM determined that the affected public

13   lands were not withdrawn from mineral entry.  BLM also decided the appropriate bond

14   amount for reclamation activities for these projects.  At the conclusion of its decision-

15   making process, BLM sent "Decision Letters" to the project proponent authorizing or

16   allowing the project to proceed.  Upon receipt of the Decision Letters and posting the

17   required bond, the project proponent may proceed with uranium exploration activities.

18       52.     BLM may have authorized or allowed other uranium exploration projects in

19   the Arizona Strip Resources Area to proceed within the area that the Secretary was

20   ordered to withdraw.  Additional uranium exploration proposals in the Arizona Strip

21   Resources Area and within the withdrawal area are currently pending.  These pending

22   proposals may be authorized or allowed by BLM to proceed at any time.

23       53.     BLM's authorization or allowance of these uranium exploration projects

24   and activities, including the Uranium One and Quaterra Alaska projects, within the area

25   that the Secretary of Interior was ordered to immediately withdraw from mineral location

26   and entry violates the Emergency Resolution, FLPMA, 43 U.S.C. § 1714(e), and 43

27

28

1   C.F.R. § 2310.5.  BLM's authorization or allowance of these uranium exploration projects

2   and activities within this area also violates FLPMA, the Mining Law, and their

3   implementing regulations because BLM failed to require preparation of a mineral

4   examination report and verify mining claim validity. 43 C.F.R. § 3809.100(a).  BLM also

5   failed to determine and verify that the projects will not cause unnecessary or undue

6   degradation of the public lands. 43 U.S.C. § 1732(b); 43 C.F.R. §§ 3809.301-313.

7   Accordingly, BLM's authorization or allowance of these uranium exploration projects

8   and activities, including the Uranium One and Quaterra Alaska projects, is arbitrary,

9   capricious, constitutes an abuse of discretion, is in excess of statutory jurisdiction,

10   authority, or limitations, is otherwise not in accordance with law, and is done without

11   observance of procedure required by law, within the meaning of the APA, 5 U.S.C. §

12   706(2).

13   Fourth Claim:            Defendants Have Violated NEPA By Failing To Comply With
                             NEPA Before Authorizing Or Allowing Uranium Exploration
14                           Projects And Activities

15       54.    Plaintiffs hereby incorporate by reference all preceding paragraphs.

16       55.    BLM's authorization or allowance of uranium exploration projects and

17   activities, including the Uranium One and Quaterra Alaska projects identified in this

18   Complaint, are major federal actions.  BLM's authorizations or allowances of the

19   Uranium One and Quaterra Alaska projects did not involve valid mining claims

20   containing the discovery of a valuable mineral deposit.  Under applicable law, BLM has

21   authority to deny or condition these uranium exploration projects and activities.  BLM's

22   authorization or allowance of uranium exploration projects and activities, including the

23   Uranium One and Quaterra Alaska projects, may have significant impacts on the

24   environment.

25       56.    BLM did not conduct a NEPA analysis or allow for public notice and

26   comment prior to authorizing or allowing the Uranium One, Quaterra Alaska, and other

27

28

1   similar uranium exploration projects and activities in the Arizona Strip Resources Area.

2   BLM did not notify the public, nor solicit public comment or review, prior to authorizing

3   or allowing the Uranium One, Quaterra Alaska, and other similar uranium exploration

4   projects and activities in the Arizona Strip Resources Area.

5        57.   BLM's failure to conduct a NEPA analysis or provide for public notice and

6   comment prior to authorizing or allowing the Uranium One and Quaterra Alaska and

7   other similar uranium exploration projects and activities in the Arizona Strip Resources

8   Area is agency action unlawfully withheld and/or unreasonably delayed. 5 U.S.C. §

9   706(1).  Accordingly, by violating NEPA, BLM's approval or allowance of Uranium

10   One, Quaterra Alaska and other similar uranium exploration projects and activities in the

11   Arizona Strip Resources Area is arbitrary and capricious, constitutes an abuse of

12   discretion, is done without observance of procedure required by law, is in excess of

13   statutory jurisdiction, authority, or limitations, and is otherwise not in accordance with

14   law, within the meaning of the Administrative Procedure Act. 5 U.S.C. § 706(2).

15   RELIEF REQUESTED

16        WHEREFORE, Plaintiffs respectfully request that this Court:

17        A.   Declare that Defendants are in violation of the Emergency Resolution,

18   FLPMA, the Mining Law, NEPA, their implementing regulations, and the APA;

19        B.   Compel the Secretary of Interior to immediately withdraw the specified

20   federal lands adjacent to Grand Canyon National Park from mineral location and entry;

21        C.   Set aside and vacate uranium exploration projects authorized or allowed by

22   Defendants, including the Uranium One and Quaterra Alaska projects, within the

23   specified federal lands adjacent to Grand Canyon National Park that were to be

24   immediately withdrawn from mineral location and entry;

25

26

27

28

1    D.    Set aside and vacate uranium exploration projects authorized or allowed by

2 Defendants, including the Uranium One and Quaterra Alaska projects, for violations of

3 FLPMA and NEPA;

4    E.    Enjoin Defendants from authorizing or allowing additional uranium

5 explorations projects in the area covered by the Emergency Resolution;

6    F.    Order Defendants to promptly respond to Plaintiffs' APA Petition;

7    G.    Award to Plaintiffs their costs, expenses, expert witness fees, and

8 reasonable attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412;

9 and

10    H.    Grant Plaintiffs such further relief as may be just, proper, and equitable.

11                                    Respectfully submitted,

12 May 8, 2009.                       /s/ Marc Fink
                                      Marc D. Fink, *pro hac vice*
13                                    Center for Biological Diversity
                                      4515 Robinson Street
14                                    Duluth, Minnesota 55804
                                      Tel: 218-525-3884; Fax: 817-582-3884
15                                    mfink@biologicaldiversity.org

16                                    Neil Levine, *pro hac vice*
                                      Grand Canyon Trust
17                                    2539 Eliot Street
                                      Denver, Colorado 80211
18                                    Tel: 303-455-0604; Fax: 303-484-8470
                                      nlevine@grandcanyontrust.org
19
                                      Roger Flynn, *pro hac vice*
20                                    Western Mining Action Project
                                      P.O. Box 349
21                                    440 Main St., #2
                                      Lyons, CO 80540
22                                    Tel: 303-823-5738; Fax: 303-823-5732
                                      wmap@igc.org
23
                                      Attorneys for Plaintiffs
24

25

26

27

28

SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -                    19

CERTIFICATE OF SERVICE

1

     I hereby certify that on May 8, 2009, the above document was filed with the

2

Court's CM/ECF system, which will generate a Notice of Filing and Service on the

following:

3

Stacey Stoller

4

U.S. Dept. of Justice

Env. and Natural Resources Div.

5

Law and Policy Section

P.O. Box 4390

6

Benjamin Franklin Station

Washington D.C.  20044-4390

7

Constance Brooks

8

Michael Marinovich

C.E. Brooks & Assoc.

9

303 East 17th Street, Ste. 650

Denver, CO  80203

10

William Klain

11

Lang & Baker

8767 East Via de Comercio, Ste 102

12

Scottsdale, AZ  85258

13

Michael Drysdale

Dorsey & Whitney

14

50 South Sixth St., Ste 1500

Minneapolis, MN  55402-1498

15

Lisa Anne Smith

16

DeConcini McDonald Yetwin & Lacy

2525 E. Broadway Blvd. Ste 200

17

Tucson, AZ  85716

18

Steven J. Lechner

19

William Perry Pendley

Mountain States Legal Foundation

20

2596 South Lewis Way

Lakewood, CO  80227

21

22

23

24

25

26

27

28