1

2

3 Steven J. Lechner, Esq., *admitted pro hac vice*
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
4 Lakewood, Colorado 80227
(303) 292-2021 (telephone)
5 (303) 292-1980 (facsimile)
lechner@mountainstateslegal.com

6

7 Attorney for Defendant-Intervenor
Northwest Mining Association

8

9 IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PRESCOTT DIVISION

10

11 CENTER FOR BIOLOGICAL DIVERSITY;    )    No. CV 08-8117-PCT-NVW
GRAND CANYON TRUST; and             )
12 SIERRA CLUB,                        )
                                      )
13 Plaintiffs,                         )
                                      )    **NORTHWEST MINING**
14 v.                                  )    **ASSOCIATION'S RESPONSE**
                                      )    **TO JOINT MOTION FOR**
15 KEN SALAZAR, Secretary of the Interior; )  **DISMISSAL [Dkt. No. 102]**
U.S. DEPARTMENT OF THE INTERIOR; and )
16 U.S. BUREAU OF LAND MANAGEMENT,     )
                                      )
17 Defendants,                         )
                                      )
18 and                                 )
                                      )
19 QUATERRA ALASKA, INC.;              )
NORTHWEST MINING ASSOCIATION;       )
20 and URANIUM ONE U.S.A., INC.,       )
                                      )
21 Defendant-Intervenors.              )
                                      )
22

23                    **INTRODUCTION**

24        On December 17, 2009, Plaintiffs and Federal Defendants filed, pursuant to

25 Fed. R. Civ. P. 41(a)(2), a Joint Motion for Dismissal [Dkt. No. 102], in which Plaintiffs

26 and Federal Defendants seek to have Plaintiffs' remaining two claims for relief dismissed

27 without prejudice.  In addition, Plaintiffs and Federal Defendants ask that this Court

28 incorporate the terms of their Settlement Agreement into the order granting dismissal.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Notably, within that Settlement Agreement, Federal Defendants have agreed to provide certain notice to Plaintiffs, even though the providing of such notice is not required by statute or regulation.  Finally, Plaintiffs and Federal Defendants ask that this Court retain jurisdiction to enforce the Settlement Agreement.  As Northwest Mining Association ("NWMA") demonstrates below, this Court should simply dismiss Plaintiffs' remaining two claims without retaining jurisdiction.[1]

## ARGUMENT

### I.    FEDERAL COURTS HAVE LIMITED JURISDICTION THAT MAY NOT BE CREATED BY AGREEMENT OF SETTLING PARTIES.

Federal Rule of Civil Procedure 41(a)(2) allows a court to dismiss an action "on terms that the court considers proper."  Federal courts, however, are courts of limited jurisdiction, that is, they have jurisdiction to the extent authorized by the Constitution (U.S. Const. art. III) and by lawful statutes enacted by Congress (*e.g.*, 28 U.S.C. § 1331). *See*, *e.g.*, *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 173–180 (1803).  For that reason, every federal court has a special obligation to "'satisfy itself . . . of its own jurisdiction,'" "even though the parties are prepared to concede it."  *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)). In addition, because federal courts have limited jurisdiction, it is presumed that a claim for relief lies outside of its jurisdiction.  *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994) (citing *Turner v. Bank of North America*, 4 U.S. (4 Dall.) 8, 11, (1799)).  Thus, the burden of proving jurisdiction lies on the party asserting jurisdiction.  *Id.*; *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936).  Here, that heavy burden falls on Plaintiffs, which they have not satisfied.

---

[1] NWMA also incorporates the oppositions anticipated to be filed by Quaterra Alaska, Inc., and Uranium One U.S.A., Inc.

1

2

3

## II.   PLAINTIFFS HAVE FAILED TO PROVE THAT THEY HAVE STANDING.

4

5

6

7

8

9

10

11

        Article II, section 2 of the U.S. Constitution limits the jurisdiction of federal courts to "cases" or "controversies."  The "irreducible constitutional minimum" of the "case or controversy" requirement is that the party invoking the jurisdiction of a federal court must have standing to sue.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).  The standing inquiry "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (citing *Barrows v. Jackson*, 346 U.S. 249, 255-56 (1953)).  To satisfy the constitutional limitations, a plaintiff must fulfill each of the following three elements:

12

13

14

15

16

        First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'"  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

17

*Defenders of Wildlife*, 504 U.S. at 560-61 (internal citations and footnotes omitted).

18

19

20

21

22

23

24

25

26

        In addition to these "immutable" requirements of Article III, *Bennett v. Spear*, 520 U.S. 154, 162 (1997), the Supreme Court has "also adhered to a set of prudential principles that bear on the question of standing."  *Valley Forge Christian College v. Americans United for Separation of Church and States*, 454 U.S. 464, 474 (1982).  "Like their constitutional counterparts, these 'judicially self-imposed limits on the exercise of federal jurisdiction' are 'founded in concern about the proper-and-properly limited-role of the courts in a democratic society[.]'"  *Bennett*, 520 U.S. at 162 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984); *Warth*, 422 U.S. at 498).  The Supreme Court has summarized these prudential principles as follows:

27

28

        First, the Court has held that when the asserted harm is a "generalized grievance" shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of

1

2

3 jurisdiction.  Second, even when the plaintiff has alleged injury
sufficient to meet the "case or controversy" requirement, this Court has
4 held that the plaintiff generally must assert his own legal rights and
interests, and cannot rest his claim to relief on the legal rights or interests
5 of third parties.  Without such limitations—closely related to Art. III
concerns but essentially matters of judicial self-governance—the courts
6 would be called upon to decide abstract questions of wide public
significance even though other governmental institutions may be more
7 competent to address the questions and even though judicial intervention
may be unnecessary to protect individual rights.

8 *Warth*, 422 U.S. at 499-500 (internal citations omitted).

9       It is well established, that the party invoking federal jurisdiction bears the burden

10 of establishing standing.  *Defenders of Wildlife*, 504 U.S. at 561.  More importantly,

11 "[W]hen the plaintiff is not himself the object of the government action or inaction he

12 challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to

13 establish."[2]  *Id*. at 562 (citation omitted).

14       In the instant case, the bald allegations in Plaintiffs' Supplemental Complaint do

15 not prove how they or their members have suffered an "injury in fact" that is concrete and

16 particularized, and that is actual or imminent, not conjectural or hypothetical.  *See, e.g*.,

17 *Summers v. Earth Island Inst*., 555 U.S. ___, 129 S. Ct. 1142, 1148–51 (2009) (holding

18 that environmental groups lack standing without a live dispute over a concrete application

19 of Forest Service regulations).  Nor have Plaintiffs demonstrated a "causal connection"

20 between their purported injury and the alleged "actions" of Federal Defendants.  *See, e.g*.,

21 *Lee v. Oregon*, 107 F.3d 1382, 1389 (9th Cir. 1997) (holding that a tenuous and

22

_____

23 [2] An organization has standing to bring suit on behalf of its members when:

24       (a) its members would otherwise have standing to sue in their own
right; (b) the interests it seeks to protect are germane to the
25       organization's purposes; and (c) neither the claim asserted nor the
relief requested requires the participation of individual members in
26       the lawsuit.

27 *Associated Gen. Contractors of Calif., Inc. v. Coal. for Econ. Equal.*, 950 F.2d
1401, 1406 (9th Cir. 1991) (quoting *Hunt v. Washington State Apple Adv. Comm'n*,
28 432 U.S. 333, 343 (1977)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

speculative chain of causation is not adequate to support standing).  Finally, Plaintiffs have been totally remiss in even suggesting how their purported injury would be redressed by a favorable decision.  *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 75 n.20 (1978) (holding that a plaintiff must show a "substantial likelihood" that the alleged injury will be redressed by the relief it seeks).

Notably, establishing these elements are not merely

> [P]leading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.

*Defenders of Wildlife*, 504 U.S. at 561.  Granted, at the motion dismiss stage, a court may generally "presum[e] that general allegations embrace those specific facts that are necessary to support [a] claim."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990).  But this is not the ordinary motion to dismiss stage.  To the contrary, by asking this Court to retain jurisdiction, Plaintiffs are essentially telling this Court, "We have standing.  Trust us."

NWMA submits that this Court should not trust Plaintiffs.  Instead, if Plaintiffs want this Court to retain jurisdiction, they should be required to submit proof as to each element of Article III standing, similar to the amount of proof required at the summary judgment stage.  *Defenders of Wildlife*, 504 U.S. at 561 ("In response to a summary judgment motion . . . the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed.Rule Civ.Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true.  And at the final stage, those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.'") (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 114–115, n.31 (1979)).  Without such proof, this Court should simply dismiss Plaintiffs' remaining two claims without retaining jurisdiction.

1

2

3

**III.    A WAIVER OF SOVEREIGN IMMUNITY MAY BE LACKING.**

4

        With their remaining two claims for relief, Plaintiffs seek judicial review, under the

5

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702–706, of Federal Defendants'

6

purported "authorization or allowance" of "notice-level" mining operations in northern

7

Arizona.  Supplemental Complaint (Dkt. No. 84) ¶¶ 48–57.  Specifically, Plaintiffs allege

8

that Federal Defendants violated the Federal Land Policy and Management Act

9

("FLPMA"), 43 U.S.C. §§ 1701-1783, Mining Law, 30 U.S.C. § 22 *et seq*., National

10

Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and applicable

11

implementing regulations when they "authorized or allowed" those operations.  *Id.*

12

Plaintiffs contend that jurisdiction over their remaining two claims is "rooted" in the APA.

13

Plaintiffs' Opening Brief Re: Discovery (Dkt. No. 72) at 5.

14

        It is well settled that jurisdiction over any suit against the federal government

15

requires a clear waiver of sovereign immunity.  *Cato v. United States*, 70 F.3d 1103, 1107

16

(9th Cir. 1995).  It is also well established that federal agencies cannot waive sovereign

17

immunity.  *Commodity Futures Trading Comm'n v. Frankwell Bullion Ltd*., 99 F.3d 299,

18

306 n.5 (9th Cir. 1996) ("[The plaintiff] also argues that the [federal government] waived

19

its sovereign immunity argument by not raising it before the district court.  This argument

20

lacks merit; an official cannot waive sovereign immunity by failing to object to a court's

21

jurisdiction.").  By asking this Court to retain jurisdiction, Plaintiffs are saying to this

22

Court, "There is a waiver of sovereign immunity.  Trust us."

23

        In the instant case, a waiver of sovereign immunity, if any, must be found in the

24

APA.  The APA's waiver of sovereign immunity, however, contains several limitations.

25

Of relevance here is 5 U.S.C. § 704, which provides, *inter alia*, that only "[a]gency action

26

made reviewable by statute and final agency action for which there is no other adequate

27

remedy in a court, are subject to judicial review."[3]  5 U.S.C. § 704.  Neither FLPMA, the

28

[3] The APA defines "agency action" to include "the whole or a part of an agency
rule, order, license, sanction, relief, or the equivalent or denial thereof, or *failure to*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mining Law, nor NEPA contain a private right of action.  Thus, Plaintiffs must establish "final agency action" in order for there to be a waiver of sovereign immunity.  This is true whether Plaintiffs' remaining claims are challenging action taken by Federal Defendants or challenging Federal Defendants' failure to take a "discrete action" that is "legally required."  *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61–64 (2004).

This Court has noted that there are questions whether "final agency action" has occurred and whether "major federal action" has occurred so as to trigger NEPA.  Order filed July 13, 2009 (Dkt. No. 89) at 2–5; *see also Sierra Club v. Penfold*, 857 F.2d 1307, 1312–1314 (9th Cir. 1988) (holding notice-level mining activities are not "major federal actions"); *Mineral Policy Center v. Norton*, 292 F.Supp.2d 30, 52–56 (D.D.C. 2003) (same); *cf. Minard Run Oil Co. v. U.S. Forest Service*, 2009 WL 4937785. *24–31 (W.D. Pa. 2009) (the exercise of private oil and gas rights underlying federal surface estates does not trigger NEPA).  Thus, Plaintiffs cannot satisfy the requirements of 5 U.S.C. § 704 for a waiver of sovereign immunity.

Again, NWMA submits that this Court should not trust Plaintiffs.  Instead, this Court should simply dismiss Plaintiffs' remaining two claims without retaining jurisdiction, unless Plaintiffs prove that sovereign immunity has been waived.

## IV.    THIS COURT MAY WANT TO QUESTION THE PROPRIETY OF THE SETTLEMENT AGREEMENT.

The Settlement Agreement requires Federal Defendants to:

Notify Plaintiffs within 15 calendar days of its receipt of any new mining notices or modifications to any existing notices, and within 30 calendar days of its receipt of any new plans of operations or modifications to any existing plans of operations, on lands managed by the BLM within the area proposed for withdrawal on July 21, 2009 (74 Fed. Reg. 35887).

---

*act*." 5 U.S.C. § 551(13) (emphasis added).  The APA also provides relief for an agency's failure to act:  "The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Settlement Agreement (Dkt. No. 103) ¶ 2.  The Settlement Agreement further requires Federal Defendants to notify Plaintiffs if Federal Defendants discover evidence of exploration activities being conducted on various claims covered by existing notices.  *Id*. at ¶ 3.

It is well established that "an agency literally has no power to act . . . unless and until Congress confers power upon it."  *Louisiana Public Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).  There is no statute or regulation that authorizes Federal Defendants to provide such notice to Plaintiffs.  Nor does the Settlement Agreement include the normal, boilerplate language that federal agencies include in most settlement agreements:

> Nothing in this Agreement shall be interpreted as, or shall constitute, a commitment or requirement that the agency obligate, commit, or expend funds not appropriated by Congress, or take any action in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable law or regulation.

Granted, the Attorney General has considerable discretion, under 28 U.S.C. §§ 516, 519, to settle litigation.  However, a settlement agreement may constitute a judicially reviewable final agency action when an agency has "exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations" in agreeing to the settlement. *United States  v. Carpenter*, 526 F.3d 1237, 1241-42 (9th Cir. 2008) (citing *Guadamuz v. Bowen*, 859 F.2d 762, 767 (9th Cir. 1988); *Executive Business Media, Inc. v. U.S. Dept. of Defense*, 3 F.3d 759, 761 (4th Cir. 1993)).  Therefore, NWMA submits that this Court may want to question the propriety of the Settlement Agreement.

## CONCLUSION

For the foregoing reasons, NWMA submits that this Court should dismiss Plaintiffs' remaining two claims for relief without retaining jurisdiction, unless Plaintiffs prove that they have standing and that there is a waiver of sovereign immunity.  NWMA further submits that this Court may want to question the propriety of the Settlement Agreement.

1
2
3   DATED this 4th day of January 2010.
4
                                    Respectfully Submitted By:
5
                                    MOUNTAIN STATES LEGAL FOUNDATION
6
                                     /s/ Steven J. Lechner
7                                    Steven J. Lechner, Esq. *admitted pro hac vice*
                                     2596 South Lewis Way
8                                    Lakewood, Colorado 80227
                                     (303) 292-2021 (telephone)
9                                    (303) 292-1980 (facsimile)
                                     lechner@mountainstateslegal.com
10                                   wppendley@mountainstateslegal.com

11                                   Attorney for Defendant-Intervenor
                                     Northwest Mining Association
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

## CERTIFICATE OF SERVICE

4

        I hereby certify that on this 4th day of January 2010, I served a true and accurate
copy of the foregoing NORTHWEST MINING ASSOCIATION'S RESPONSE TO
JOINT MOTION FOR DISMISSAL [Dkt. No. 102] with the Court's CM/ECF system,
which will generate a Notice of Filing and Service on the following:

5

6

7

8    Marc D. Fink                              Stacy R. Stoller
     Center for Biological Diversity           U.S. Department of Justice
9    4515 Robinson Street                      Environment and Natural Resources Division
     Duluth, Minnesota 55804                   Law and Policy Section
10   (218) 525-3884                            P.O. Box 4390
     (218) 525-3857 (fax)                      Ben Franklin Station
     mfink@biologicaldiversity.org             Washington, D.C. 20044-4390
11                                             (602)-514-7583
     Neil Levine                               stacey.stoller@usdoj.gov
12   Neil Levine Law Offices
     2539 Elliot Street                        William George Klain
13   Denver, Colorado 80211                    Lang & Baker, PLC
     (303) 455-0604                            8767 East Via De Commercio, Suite 102
14   (303) 484-8470 (fax)                      Scottsdale, Arizona 85258
     nlevine@grandcanyontrust.org              (480) 947-1911
15                                             (480) 970-5034 (fax)
     Roger Flynn                               jarrington@lang-baker.com
16   Western Mining Action Project
     P.O. Box 349                              Michael B. Marinovich
17   Lyons, Colorado 80540                     C.E. Brooks & Associates, PC
     (303) 823-5738                            303 East 17th Avenue, Suite 650
18   (303) 823-5732 (fax)                      Denver, Colorado 80203
     wmap@igc.org                              (303) 297-9100
19                                             (303) 297-9101 (fax)
     Constance E. Brooks                       mike@cebrooks.com
20   C.E. Brooks & Associates, PC
     303 East 17th Avenue, Suite 650           Lisa Anne Smith
21   Denver, Colorado 80203                    DeConcini McDonald Yetwin & Lacy
     (303) 297-9100                            2525 East Broadway Blvd., Suite 200
22   (303) 297-9101 (fax)                      Tucson, Arizona 85716-5300
     connie@cebrooks.com                       (520) 322-5000
23                                             (520) 322-5585
     Michael Drysdale                          lasmith@dmyl.com
24   Dorsey & Whitney, LLP
     50 South Sixth Street, Suite 1500
25   Minneapolis, Minnesota 55402-1498
     (612) 340-2600
26   Drysdale.Michael@dorsey.com

27                                              /s/ Steven J. Lechner

28