Marc D. Fink (Admitted pro hac vice)
Center for Biological Diversity
209 East 7th Street
Duluth, Minnesota 55805
Tel: 218-525-3884; Fax: 817-582-3884
mfink@biologicaldiversity.org

Neil Levine (Admitted pro hac vice)
Grand Canyon Trust
2539 Eliot Street
Denver, Colorado 80211
Tel: 303-455-0604; Fax: 303-484-8470
nlevine@grandcanyontrust.org

Roger Flynn (Admitted pro hac vice)
Western Mining Action Project
P.O. Box 349
440 Main Street, #2
Lyons, Colorado 80540
Tel: 303-823-5738; Fax: 303-823-5732
wmap@igc.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PRESCOTT DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; GRAND CANYON TRUST; and SIERRA CLUB, <br><br> Plaintiffs <br><br> vs. <br><br> KEN SALAZAR, Sec'y of the Interior; U.S. DEPARTMENT OF THE INTERIOR; and U.S. BUREAU OF LAND MANAGEMENT, <br><br> Defendants <br><br> QUATERRA ALASKA; NORTHWEST MINING ASSOCIATION; and URANIUM ONE U.S.A., <br><br> Defendant-Intervenors. | Case No. 08-8117-PHX-NVW <br><br> PLAINTIFFS' REPLY MEMORANDUM IN RESPONSE TO INTERVENORS' OBJECTIONS TO JOINT MOTION TO DISMISS AND SETTLEMENT AGREEMENT |

INTRODUCTION

On December 17, 2009, after weeks of negotiations, Plaintiffs and Federal Defendants agreed to settle their differences and jointly moved to dismiss Claims 3 and 4. Dkt. 102, 103, 103-1.[1] In relevant part, the Settlement Agreement provides that Federal Defendant U.S. Bureau of Land Management (BLM) will provide Plaintiffs with notice of applications for new uranium exploration projects and notice that exploration activities for the 18 challenged uranium exploration projects are beginning. Id. at 103 ¶ 2 & 3. The Joint Motion to Dismiss is predicated upon -- and remains so -- the Court retaining jurisdiction for the purpose of enforcing the Settlement Agreement. Id. at 102.[2] Plaintiffs and Federal Defendants have elected to settle the remaining two claims rather than proceed with litigation, which would have included written discovery and briefing on the issue of subject mater jurisdiction as contemplated in the Court's July 13, 2009 Order. See Dkt. 89.

On January 4, 2010, the three Mining-Intervenors responded to the Joint Motion to Dismiss and objected to the Settlement Agreement, claiming the Court lacks jurisdiction over Claims 3 and 4 and, therefore, there is no basis to retain jurisdiction over the Settlement Agreement. They specifically argue (1) Plaintiffs have yet to prove standing, and (2) jurisdiction for Claims 3 and 4 under the Administrative Procedure Act (APA) is lacking because BLM's approval of Notice-level operations is not "final agency action."[3] These are the same contentions that would have been fully addressed in jurisdiction motions.

---

[1] Three extension requests on the contemplated jurisdictional motions were granted to allow for settlement. Dkt. 96, 97, 99, 100 & 101.

[2] Intervenors Uranium One and Quaterra claim that the retention of jurisdiction provision was a "new provision" compared to prior drafts they were privy to. However, from Plaintiffs' perspective, this provision has always been a prerequisite to any settlement because otherwise, what Federal Defendants have agreed to is unenforceable. See Kokkonen v. Guardian Life Ins. of America, 511 U.S. 375 (1994).

[3] Whether a BLM approval of an exploration project is a "major federal action" is not an issue of subject matter jurisdiction, but an element of Plaintiffs' fourth cause of action under the National Environmental Policy Act (NEPA). Claims to the contrary (Dkt. 105 at 6:6-11) are simply misguided.

*Plaintiffs' Reply Memorandum* -1-

1   For the following reasons, Intervenors' objections should be rejected and the Court should grant the Joint Motion to Dismiss upon the terms requested.  First, while seeking to obstruct a reasonable settlement, Intervenors fail to demonstrate they will be impacted -- let alone suffer legal prejudice -- by the terms of the Settlement Agreement.  The Agreement imposes no future obligations on Intervenors, its terms do not prevent Intervenors from proceeding with their exploration projects, and these same jurisdictional arguments can be raised should Plaintiffs challenge uranium exploration projects in the future.

Second, Intervenors' two jurisdictional objections are unfounded.  Their standing argument is not that Plaintiffs lack standing, but Plaintiffs have yet to prove standing.  Although this issue is raised in the context of a dismissal motion, Plaintiffs now submit three standing declarations to ensure no debate.  By presenting their "final agency action" argument in the present context, Intervenors unfairly seek to deny Plaintiffs the opportunity to gather additional facts through written discovery.  This argument is also wrongly based on whether there is a NEPA violation, as opposed to whether there is APA jurisdiction.  Regardless, Plaintiffs demonstrate that, in approving the challenged Notice-level uranium exploration projects in the Arizona Strip Resource Area, BLM undertook an administrative process that concluded with its permission to proceed with exploration activities -- confirming there was, in fact, final agency action.  If there is any doubt, however, Plaintiffs should be permitted to proceed with discovery on the jurisdictional issue of final agency action.

I.  INTERVENORS FAIL TO DEMONSTRATE LEGAL PREJUDICE

A non-settling party cannot veto a settlement unless its terms cause that defendant "plain legal prejudice." Waller v. Financial Corp. of Am., 828 F.2d 579, 582-83 (9th Cir. 1987).  As the Ninth Circuit explained in Waller:

> This standard strikes a balance between the desire to promote settlements and the interests of justice.  It also maintains consistency with Fed. R. Civ. P. 41(a)(2) which governs voluntary dismissals of lawsuits.  In this Circuit, as elsewhere, a district court should grant a motion for voluntary dismissal unless a defendant can show that it will suffer some plain legal prejudice as a result.

*Plaintiffs' Reply Memorandum* -2-

828 F.2d at 583; see <u>Local No. 93, Int'l Ass'n of Firefighters v. Cleveland</u>, 478 U.S. 501, 528-30 (1986) (ruling lower court acted properly in entering consent decree over intervenor's objections when decree did not bind intervenor or impose any legal duties upon it); <u>Webb v. Beverly Hills Fed. Sav. & Loan Ass'n</u>, 364 F.2d 146, 149 (9th Cir. 1966) (dismissing appeal by intervenors objecting to district court's acceptance of settlement agreement that did not affect intervenors' legal rights or obligations). The term "legal prejudice" means "prejudice to some legal interest, some legal claim, some legal argument." <u>Smith v. Lenches</u>, 263 F.3d 972, 976 (9th Cir. 2001). The burden to show legal prejudice rests with the non-settling party. <u>Waller</u>, 828 F.2d at 583.

Here, Intervenors make no argument concerning legal prejudice, let alone have they met their burden. The Settlement Agreement imposes no obligations of any sort on the Intervenors. <u>See</u> <u>Local No. 93</u>, 478 U.S. at 528-29 (settlement "may not impose duties or obligations on a third party, without that party's agreement"). It also does not foreclose Intervenors' ability to proceed, if they choose, with exploration activities at the approved sites or seek BLM permission for new exploration projects. In addition, nothing precludes Intervenors from making their jurisdictional arguments should there be a need to enforce the Settlement Agreement or in the event Plaintiffs file a new case challenging an exploration project.

Further, the positions Intervenors have taken to-date undermine any claim of prejudice. For instance, Intervenors have been parties to this case for over 12 months, but chose not to challenge jurisdiction. In addition, despite concerns now expressed over jurisdiction, Intervenors agreed to the dismissal of Plaintiffs' Claims 1 and 2 without disputing Plaintiffs' standing or subject matter jurisdiction. Dkt. 94; Dkt. 95 ¶ 3 ("each of the three Defendant-Intervenors responded to Plaintiffs' August 28th letter, explaining that they do not object to the voluntary dismissal of Claims 1-4 without prejudice"). While they disagreed with the condition of advance notice for dismissing Claims 3 and 4 (Dkt. 94), Intervenors were amenable to dismissing Claims 3 and 4 absent the advance notice condition, despite the presence of these same jurisdictional

*Plaintiffs' Reply Memorandum* -3-

issues. See id. ("they are unable to agree to any stipulations as to advance notice of exploration with respect to Claims 3 and 4").[4]

At bottom, Intervenors may not block the Settlement Agreement between Plaintiffs and Federal Defendants "merely by withholding its consent," but must demonstrate legal prejudice that will result from the Agreement. See Local No. 93, 478 U.S. at 529. Intervenors have not done so. Indeed, Intervenors will suffer no legal -- or other -- prejudice as a result of the Settlement Agreement and therefore have no standing to object to the Joint Motion to Dismiss and Settlement Agreement. See Smith v. Arthur Anderson, 421 F.3d 989, 998 (9th Cir. 2005) ("prejudice exists where settlement purports to strip [non-settling defendant] of a legal claim or cause of action, an action for indemnity or contribution for example") (internal quotations omitted); New Mexico v. U.S. Dep't of Interior, 820 F.2d 441, 445 (D.C. Cir. 1987) (holding Navajo Tribe's challenge to settlement did not prejudice Tribe because they could raise their legal objections in subsequent litigation).

## II. PLAINTIFFFS HAVE STANDING

In their Supplemental Complaint, Plaintiffs set forth factual allegations to satisfy the notice-pleading requirements of the Federal Rules of Civil Procedure regarding all necessary elements of their case, including their Article III standing. In responding to the Joint Motion to Dismiss and Settlement Agreement, Intervenors chastise Plaintiffs' standing allegations for not meeting standards necessary at the summary judgment stage. See, e.g., Dkt. 106 at 5. Nowhere do Intervenors suggest, however, that Plaintiffs lack standing, only that Plaintiffs have yet to provide evidence to support standing or, as NWMA puts it, Plaintiffs cannot be trusted absent such evidence. See Dkt. 104 at 5:18.

Because Intervenors' standing objections have been raised in the context of a dismissal motion, the applicable standard requires the Court to accept as true the

---

[4] Notice under the Settlement Agreement is different than the notice sought in Plaintiffs' Motion for Voluntary Conditional Dismissal. See Dkt. 97. There, Intervenors were being requested to provide 60 days of advance notice before exploration activities begin, whereas here BLM provides notice after activities commence.

*Plaintiffs' Reply Memorandum*                -4-

complaint's allegations. Lujan v. NWF, 497 U.S. 871, 889 (1990). The Supreme Court has recognized a much lower evidentiary burden at the motion to dismiss stage:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim. []  In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, [] which for purposes of the summary judgment motion will be taken to be true.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (internal quotation omitted); NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

The Supplemental Complaint contains allegations addressing the approved uranium exploration projects.

> Plaintiffs' members use and enjoy the federal lands that are located north and south of Grand Canyon National Park, including the lands that are within the areas of the required mineral withdrawal.

Dkt. 84, ¶ 8. Because the lands covered by the Emergency Withdrawal and the July 2009 Segregation Order are the same lands where the particular explorations projects are located, Plaintiffs' allegations sufficiently apply to the challenge projects. The Complaint also describes Plaintiffs' interest "more specifically [to] include[e] lands that Defendants have or will authoriz(ed) or allow(ed) uranium drilling and exploration." Id.; see also id. at ¶ 9 (attributing injury to BLM's actions of "continu[ing] to authorize mining and exploration within the area of the required withdrawal"). These factual assertions apply to the specific projects at issue in Claims 3 and 4 and the Settlement Agreement, including Quaterra and Uranium One's exploration projects. Accordingly, Plaintiffs made sufficient allegations to survive a motion to dismiss on their standing.

Nonetheless, in an abundance of caution, Plaintiffs submit the attached declarations of Taylor McKinnon, Roger Clark, and Kim Crumbo to support their standing.[5] As required under Summers v. Earth Island Inst., 129 S.Ct. 1142, 1150-52 (2009), these declarations demonstrate that Plaintiffs' members use and enjoy the specific locations of the challenged uranium exploration projects in the Arizona Strip

---

[5]  Plaintiffs also submit the Map attached as Exhibit 4, which details the location of the challenge uranium exploration projects.

*Plaintiffs' Reply Memorandum*                -5-

Resource Area, as well as adjacent areas that are adversely impacted by these projects. McKinnon Dec. ¶¶ 5-9; Clark Dec. ¶¶ 10-12; Crumbo Dec. ¶ 5. These members demonstrate that the challenged uranium exploration projects will injure their ability to use and enjoy these areas, as well as the Trust's operations at its Kane and Two-Mile Ranches. McKinnon Dec. ¶¶ 8, 11; Clark Dec. ¶¶ 9, 13-16; Crumbo Dec. ¶ 6. McKinnon, Clark and Crumbo also demonstrate their specific and firm intent to return to the area where the 18 uranium exploration projects are located and where the impacts will be realized. McKinnon Dec. ¶ 10; Clark Dec. ¶¶ 9, 12; Crumbo Dec. ¶ 8.

Plaintiffs' interests are injured by BLM's approval of uranium exploration projects absent compliance with the law. An injunction requiring BLM to review and approve these projects only after (1) conducting a formal determination that a valid mineral deposit exists under Mining Law regulations, (2) determining and verifying that the projects will not cause unnecessary or undue degradation of the public lands under the Federal Land Management and Policy Act (FLPMA), and (3) undertaking a process providing for public review and disclosure of the environmental impacts under the National Environmental Policy Act (NEPA) -- the violations alleged in Claims 3 and 4 -- would remedy these injuries. Injury to Plaintiffs' interest is further supported by Ninth Circuit law, ruling that environmental injury occurs when an agency fails to undertake a NEPA environmental review process, as BLM failed to do here. High Sierra Hikers, 390 F.3d at 642 ("In the NEPA context, irreparable injury flows from the failure to evaluate the environmental impact of a major federal action."); Laguna Beltway v. U.S. Dept. of Transportation, 42 F.3d 517, 527 (9th Cir. 1994) (holding "ultimate harm NEPA seeks to prevent" is "the risk of damage to the environment that results if the agency fails to properly and thoroughly evaluate the environmental impacts of a proposed project"). Finally, there is also NEPA procedural harm to Plaintiffs' underlying environmental interest in that Plaintiffs' members have been denied information about the challenged exploration projects and the opportunity to participate in the decisionmaking process. McKinnon Dec. ¶ 12; Clark Dec. ¶ 17; Crumbo Dec. ¶ 9.

1       In sum, Plaintiffs have standing to support the Court retaining jurisdiction.

2 III.    <u>BLM APPROVALS CONSTITUTE FINAL AGENCY ACTION</u>

3       According to Intervenors, subject matter jurisdiction is lacking over Claims 3 and 4 because BLM's approval of uranium exploration projects in the Arizona Strip Resource Area is not a "final agency action." A plaintiff must challenge a "final agency action" to establish APA jurisdiction. 5 U.S.C. § 704. The APA defines "agency action" as "an agency rule, order, license, relief or the equivalent." <u>Id</u>. § 551(13). Final agency action means: (1) "the action must mark the 'consummation' of the agency's decisionmaking process -- it must not be of a merely tentative or interlocutory nature;" and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" <u>Bennett v. Spear</u>, 520 U.S. 154, 177-178 (1997). "The core question is whether the agency has completed its decisionmaking process and whether the result of that process is one that will directly affect the parties." <u>Franklin v. Massachusetts</u>, 505 U.S. 788, 797 (2005). The inquiry must be viewed "pragmatically," and "it is the effect of the action and not its label that must be considered." <u>Oregon Natural Desert Ass'n v. U.S. Forest Service</u> ("<u>ONDA</u>"), 465 F.3d 977, 987 (9th Cir. 2006)).

      Plaintiffs propounded written discovery on Federal Defendants to provide evidence of final agency action. Courts within the Ninth Circuit authorize such jurisdictional discovery. <u>Laub v. U.S. Department of the Interior</u>, 342 F.3d 1080, 1093 (9th Cir. 2003). In its July 13, 2009 Order, the Court recognized that jurisdictional discovery is permissible. Dkt. 89 at 5. However, discovery was put on hold until after the anticipated jurisdictional motions crystallized the factual issues relevant to final agency action (<u>id</u>. at 6) and to provide the parties time to settle the case. Below, Plaintiffs demonstrate BLM's approvals of the challenged uranium exploration projects constitute final agency action based on the information currently available. However, to the extent this evidence is deemed insufficient or its applicability disputed, Plaintiffs request permission to proceed with written discovery.

As an initial matter, it is important to recognize that the primary basis of Intervenors' argument has nothing to do with APA jurisdiction. It is instead premised on a fundamental element of a NEPA violation. The case law Intervenors present goes to whether there is a "major federal action," but that issue goes to the merits of Plaintiffs' Claim 4 and not whether there is APA jurisdiction over Claims 3 and 4. See Native Ecosystems Council v. U.S. Forest Serv., 428 F.3d 1233, 1239 (9th Cir. 2005) (noting elements of NEPA violation as "major federal action" that "may have a significant effect upon the environment"). Because the NEPA issue of major federal action is not one of jurisdiction, much of Intervenors' "jurisdictional" argument can be ignored. See Dkt. 105 at 5-8, 11-12; Dkt. 104 at 7.

Regardless, Plaintiffs' Claims 3 and 4 challenge final agency actions because (1) BLM engaged in an administrative process that concluded after BLM underwent the "clearance" process and determined an amount for reclamation bonds, (2) BLM provided specific approvals for each exploration project, and (3) BLM's approvals have a legal and practical effect. Fundamentally, before a company can conduct exploration activities in the Arizona Strip Resource Area, BLM must provide its approval to access these public lands. The administrative record makes clear that Notice-level uranium exploration operations require explicit BLM permission to go forward.

> Uranium One and their drill contractor . . . <u>have the BLM's permission to access the proposed location and conduct operations as proposed in their Notice of Intent</u>.

Exh. 3 at 20 (emphasis added).[6] Absent BLM permission, uranium exploration activities cannot occur. As BLM warns, uranium exploration "must not begin any level of surface disturbance greater than 'Casual Use'" before obtaining required survey and clearances for the proposed project. Id. at 29; Exh. 1 at 38 (BLM noting any level of surface disturbance greater than "casual use" is prohibited until specific conditions can

---

[6] Exhibits 1-3 are excerpts from BLM's administrative record and each exhibit corresponds to the exploration project number BLM provided.

Plaintiffs' Reply Memorandum                -8-

be met); Exh. 2 at 28 (same warning).[7]  Accordingly, because BLM undertakes an administrative process before permitting companies "to access the proposed location and conduct operations as proposed" and prohibits activities until certain conditions are met, BLM's approvals are final agency actions.

BLM's administrative process includes an evaluation of a project's impacts. Through "clearances," BLM can eliminate or limit the adverse impacts of uranium exploration activities by imposing conditions.  BLM employed the clearance process prior to approving the uranium exploration projects at issue. See, e.g., Exh. 1 at 47 (noting BLM received an exploration notice from Quaterra and "request for [threatened and endangered] plant, animal, and cultural clearances."); id. at 44 ("Biological Clearance" for Quaterra project); id. at 38 (approval conditioned on completing archeology survey and "cultural clearance").  BLM's clearance process for a Quaterra project revealed "concerns" about impacts to an archeological site and required avoiding the site as a condition of approval. Exh. 1 at 47 ("monitor any surface disturbance to ensure that the site is not adversely affected by [] access and uranium exploration drilling"); see also id. at 49 (cultural resource clearance stating "[o]ne eligible site[] was found on western edge of the proposed claims.  The site should be monitored and avoided by any surface disturbance that could affect its eligibility to the National Register.").  Similarly, BLM determined that the areas surrounding a Quaterra project are considered suitable for migratory birds (Exh. 1 at 44) and thus required the mining company to "[a]void nesting birds." Exh. 1 at 44; see also Exh. 3 at 23 (same requirement for Uranium One project).  BLM also determined impacts to wintering mule deer must also be avoided after performing clearances. Exh. 1 at 44 ("Biological Clearance Form" noting that area is considered "winter crucial habitat" for mule deer); Exh. 3 at 23 (same).  In short, BLM's clearances are part of the agency's administrative

---

[7] Notice-level operations are, by definition, greater in impact than casual use activities. 43 C.F.R. § 3809.5 (defining casual use as "no or negligible disturbance of the public lands or resources"); id. at § 3809.10(a) ("If your operations do not qualify as casual use, you must submit a notice or plan of operations.").

*Plaintiffs' Reply Memorandum* -9-

process undertaken prior to project approval and may result in project conditions.

In addition to requiring various clearances before approving Notice-level exploration projects, BLM imposes reclamation bonds in accordance with its regulations. See 43 C.F.R. § 3809.503(c). As the regulations state, a project proponent "must provide a financial guarantee before you can begin operations under the notice." Id. The financial guarantee covers the "estimated cost . . . to reclaim your operations according to the reclamation plan." Id. § 3809.552(a). BLM has ultimate authority for determining the amount of the financial guarantee -- "Your estimate of the cost to reclaim your operations must be acceptable to BLM." Id. § 3809.554(b).

Here, BLM reviewed the challenged exploration activities to determine an appropriate bonding requirement. For example, in assessing the bond for a Quaterra project, BLM required a bond of $8,949 for 10 drill holes. Exh. 1 at 17. The challenged Uranium One project required a $10,000 bond. Exh. 3 at 29 (stating "[u]pon review of your reclamation cost estimate as required under 43 CFR 3809.301(4) the BLM . . . has determined that you must post a financial guarantee in the amount of $10,000.00"). BLM decided the amount of the bonds based on its assessment of what reclamation measures were necessary to limit the damage of the uranium exploration project. See, e.g., Exh. 2 at 16 (BLM's bonding decision based on impacts caused by drill holes, surface destruction, and waste products); Exh. 3 at 29 (same). The failure to pay the bond amount terminates the project's approval. Exh. 3 at 32 ("BLM will consider your notice withdrawn and update our records accordingly."). It is significant that once BLM determines the amount of the bond for an exploration project, the mining company may administratively appeal that decision and/or "may ask the Arizona State Director [of BLM] to review this decision." Exh. 3 at 32; Exh. 2 at 17. The bond decision and ability to appeal further demonstrates that BLM's approvals of exploration projects have practical and legal effect and thus are final agency actions. See Bennett v. Spear, 520

U.S. at 177-178 (1997); ONDA, 465 F.3d at 990.[8]

IV.     **INTERVENORS' SUBSTANTIVE CONCERNS ARE WITHOUT MERIT**

Intervenors claim BLM cannot agree to the terms providing notice to Plaintiffs because nothing in the law mandates notice. Dkt. 105. Intervenors' argument, however, confuses the distinction between what the law mandates and what the law prohibits. Congress has not provided "a clear and unambiguous directive" precluding notice to the public in general or to Plaintiffs under this Settlement Agreement. See United States v. California, 332 U.S. 19, 27 (1947); United States v. International Union of Operating Eng'rs, 638 F.2d 1161, 1162 (9th Cir. 1979). Intervenors fail to cite any law that prohibits such notice. That is because providing notice is within BLM's discretion and the Settlement Agreement merely reflects BLM exercising that discretion to settle this case. See 28 U.S.C. §§ 516 and 519; see Swift & Co. v. United States, 276 U.S. 311, 331 (1928) (finding "statutes defining the power and duties of the Attorney General [lacked] any such limitation on the exercise of his discretion").[9]

---

[8] BLM's clearance and bonding processes are undertaken, in part, to ensure compliance with the FLPMA requirement that exploration activities on public lands do not result in "unnecessary or undue degradation." 43 U.S.C. § 1732(b); Soda Mountain Wilderness Council v. Norton, 424 F.Supp.2d 1241, 1269 (E.D. Cal. 2006) (requiring BLM to "take any action necessary to prevent unnecessary or undue degradation of the lands" it manages); Mineral Policy Center v. Norton, 292 F.Supp.2d 30, 42 (D.D.C. 2003) ("FLPMA, by its plain terms, vests the Secretary of the Interior with the authority -- and indeed the obligation -- to disapprove of an otherwise permissible [activity] because the [activity] . . . would unduly harm or degrade the public land"). This FLPMA mandate applies to Notice-level exploration projects at issue in Claims 3 and 4. 43 C.F.R. § 3809.301(b)(1)(i) (requiring project proponent's Notice to include "measures that you will take to prevent unnecessary or undue degradation during operations"); id. § 3809.313(a); id. § 3809.311(c).

[9] NWMA also claims the Settlement Agreement is not proper because is lacks boilerplate language regarding the Anti-Deficiency Act (ADA). Dkt. 104. The language NWMA wants, however, has no application here. See Center for Biological Diversity v. Norton, 304 F.Supp.2d 1177, 1180 (D. Ariz. 2003), citing Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990) (finding court judgment would be complete defense to ADA prosecution and noting there has never been ADA prosecution).

*Plaintiffs' Reply Memorandum*                    -11-

1 | Respectfully submitted,
2 |
3 | Dated: January 14, 2010        */s/ Neil Levine*_____
4 |                                Neil Levine
  |                                Marc Fink
5 |                                Roger Flynn
6 |                                Attorneys for Plaintiffs
7 |
8 |
9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

# CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2010, I filed a true copy of above document has been filed with the Court's CM/ECF system, which will generate a Notice of Filing and Service on the following:

Stacey Stoller
United States Department of Justice
Environment & Natural Resources Division
Law and Policy Section
P.O. Box 4390
Benjamin Franklin Station
Washington, D.C. 20044-4390

Constance Brooks
Michael Marinovich
C.E. Brooks & Ass.
303 East 17th Street Ste. 650
Denver, CO 80203

William Klain
Lang & Baker
8767 East Via de Comercio, Ste. 102
Scottsdale, AZ 85258

Michael Drysdale
Dorsey & Whitney
50 South Sixth St,, Ste. 1500
Minneapolis, MN 55402-1498

Lisa Anne Smith
DeConcini McDonald Yetwin & Lacy
2525 E. Broadway Blvd. Ste. 200
Tucson, AZ 85716

            *s/Neil Levine*

*Plaintiffs' Reply Memorandum*     -13-